The 4th District of Public Orders of the State of Illinois does now convene. The Honorable Craig H. D. Armuth presiding. Good morning. Please have a seat. We begin today with 4-23-0034. Bull v. Hummel and Jacobus. Jacobus? Jacobus. Counsel for the appellant, could you please state your name for the record? Chris Junk. Counsel for the appellant, could you please state your name for the record? William Lucas. Mr. Junk, you may proceed. Good morning, your honors, and may it please the court. Today, the defendants are asking you to reverse the decision of the trial court and find that the defendants have the legal right to reasonably access and use the entire surface of the body of water that's partially located upon the defendant's property and partially located upon the plaintiff's property. Your honors, the trial court here erred by finding, one, that the defendants were not entitled to an easement implied by pre-existing use, and two, by finding that the article shall become statural rule does not apply. In doing so, we believe the trial court not only applied those legal principles incorrectly, but also made findings that were against the manifest weight of the evidence. So before addressing these two main legal theories, and I know that the court does not want a full recitation of the facts, we went through a lot of that in the briefs, but I do think here is a brief summary of some of the key evidence that was undisputed or otherwise stipulated, and it advances both of these arguments. The parties here in this case, your honors, own two adjoining parcels in Fulton County. In the 1970s, a mine acquired those two parcels, started mining for coal on them, and by the mid-1980s, the coal operations had ceased there, and this depression had formed filled with water, and we have a lake then that is then sitting partially on the two parties' parcels that we're discussing today. The evidence of trial showed that from approximately the mid-1980s until the filing of this lawsuit, that this lake was used recreationally for fishing and or hunting at some point. So we have a period of approximately 30 years where there was an uncontested, unrestricted recreational use of this lake. How could it really be considered uncontested when it was one owner? It's like my use of my property is uncontested as far as I know. How is that something we can put into the looking glass to see whether it's contested when it isn't an owner? I think that's a fair point, and that it would have been contested at the time that the mine owned both of the parcels. But there were no other restrictions. They were still who was controlling who got to use the lake. But from the context of having two adverse parties, Judge, I would agree that it's not applicable in this situation, at least as it pertained to that period that the mine had it. Which is a big part of the time period in question, right? Correct. So during most of this time, the mine was allowing fishing by granting permission to people such as neighbors, but also what I'm going to guess for purposes of today called business affiliates. There were clients, customers, vendors associated with the mine. They allowed to fish the body of water. The mine fished or stocked the body of water with fish. The mine allowed some of those permittees, I will call them I guess, to install boat ramps. And they even had enough fishing amongst this area that they built a guest house. To clarify, the boat ramp would have been on the opposing party's property, correct? That's correct. And the guest house wasn't on either of these properties. That's correct. And to explain that a little further, this was a large area that the mine had several bodies of water on. I'm sure the opposing side will bring that up. So the fishing, the guest house was used for all of this area, including this lake. And there were multiple lakes and the guest house addressed this entire area, not just this specific property. That's correct. The mine also allowed hunters on the property. The property started being hunted in approximately the mid-1990s to our understanding. And that continued actually as of trial. When Mr. Bull purchased the property in 2012, the hunters continued to lease the property from him. And they were allowed to construct blinds on the property. And they placed boats near these blinds to access the water. So that has continued during this, again, since approximately the mid-1990s. And so I think an important fact here not to be overlooked is that the plaintiff, Mr. Bull, knew all of this. When he acquired the property in 2012, he continued to allow the hunters to lease the property. And he actually testified at trial that the mine gave permission to the lake quote, from the time they started their operation. And he stated, quote, granted permission to people that would benefit them or their employees. So the plaintiff acquired the property knowing this. How does the use that you've described relate to your client's property, which is a very small portion of the lake? At that time, I guess referring to it as unrestricted, it was the entire body of water. So they were, some of the witnesses that testified at trial were accessing from my client's parcel. But the point here is really not as much an easement over the physical land, but more so that the access on the lake was unrestricted. And you could go anywhere on the lake once you were on it. It was unrestricted to those that it was restricted to. Right. Correct. It wasn't a public lake. It was a privately owned lake. Yes. So, I guess in summing all that up, the defendants here in this case, in this appeal, are relying on what we believe are nearly three decades of prior use and the defendants therefore should be entitled to use access to enjoy the entire surface. So I'll start with the easement applied by pre-existing use. The Illinois Supreme Court has set forth three elements of this. The first element is not a dispute today. It was actually stipulated and that's that there was a common ownership of the claim dominant and servient parcels and a subsequent conveyance or transfer separating that ownership. That's not a dispute. So moving on to the second element, was before the conveyance or transfer severing the unity of title, the common owner used part of the united parcel for the benefit of another part and this was apparent and obvious continuous and permanent. That's where I want you to really hone in on the question. Sure. The plaintiff's owner would have used the plaintiff's property in the plaintiff's portion of the lake. What is in the record to show use of the portion that your clients own or that there was use of the whole from that portion of the lake? Almost every witness, Your Honor, testified that the entire lake was accessible to use. The plaintiff's owner would retrieve waterfowl and decoys from the area without issue and all of the folks that fished it stated that they fished the entire lake, including the portions that are on my client's parcel. Mr. Johnson, Cooper Johnson, testified at trial that he actually accessed the lake from my client's parcel on occasion. So I think most of the witnesses, if not all of them, testified that the entire lake was utilized during that time, not just the portion located on Mr. Bull's property. It's troubling and it's imprecision when you say the entire. You're free to use the entire room from this bench back porch. That doesn't mean you'll need every part of it. There's imprecision when you think about I was free to use the entire lake when their client's portion was such a small part of it, whether they ever actually used it. They say that they did actually use it. Not only were they allowed to, but they did. I know that the Hunter specifically referenced retrieving waterfowl and doing things like that in that portion of the lake. The trial court agreed that the common owner used part of the United parcel for the benefit of another. I don't think that part of the second element is much in dispute. The trial court did acknowledge that the mine allowed invitees to fish on the body of water from the mid-1980s until 2012. But our position is that the court erred by finding that this wasn't permanent. With respect to the trial court, I found the opinion a little unclear as to whether or not they found it apparent and obvious. So I'm going to address that just while we're addressing these. The facts, again, are that for nearly 30 years these folks fished and hunted the property. We don't believe it can hardly be said not to be apparent when the plaintiff himself said he saw people on the property. He knew that the mine was allowing this. He testified to that that he knew it. He even continued the hunting lease. The testimony was uncontroverted that the mine was allowing the fishing and that others throughout that vicinity, that area, those associated with the mine knew that the mine was allowing that. But here's where we have to be very focused in what we're saying. Knowing that people were using the lake that largely lies on your property is different than saying I know somebody is using that small portion of the lake from my property as well. Right? I think the point of this theory is what part of the lake is mine is mine and what part is yours is yours. So it's not just use of their portion. It's use of the other portion. Right? That's where people are coming from that portion. It would be mutual. And I think this is an important part of this judgment. This is part of, I think where the trial court erred a little bit here is because they considered an argument that I element in a second. But getting into this, when they were analyzing the permanency issue, they talked about well you guys have, the plaintiff Mr. Bull has the quote lion's share I think is how the trial court stated it. And that's true. That's not relevant here. And the reason is because, I mean, at the end of the day, I mean if you look at a case like Rocketta that applied for a leasement that owner that was awarded the easement by implied by pre-existing use in that case owns zero of the lake bed. None of it. He just abutted it. And so the point here is that many of the cases cited, the Grant properties, the Rocketta case, the Dudley case, they all reference this idea that when you purchase the property, you don't always get the benefit. Sometimes you get the burden. And so in this case, Mr. Bull's property was burdened by the implied easement associated with my client's parcel. And the idea that one party got a little bit less or had much less for purposes of an easement applied by pre-existing use is not relevant. And again, I would point to Rocketta because in that case they didn't own any of the lake bed. It's not that they owned a small portion or half of it or anything to that extent. They simply abutted it. So along those same lines, the trial court kind of went into, well, the way that the mine divided the properties was telling. The mine didn't re-subdivide the property. Nothing is in the record about re-subdividing property. In fact, actually the record would show that the legal descriptions from the time the mine acquired the properties until the time that they disposed of them were essentially the same. I think they're identical frankly. There was never any evidence in the record about any re-subdivision. So... What evidence though in the record is there that the mining company intended to make this use permanent? This use of the entire lake? And going back to Justice Dougherty's comment, such that the portion on your client's property, it was apparent and obvious use and intended to be permanent. I think the permanency portions, Your Honor, are in part the stocking of the body of water. So when they put the fish in it stocked the entire body of water. It didn't just stock Mr. Bull's section. The fish were in the entire body of water. But that would physically be impossible to do, right? Unless the fish are much more law abiding than we know fish to be. I understand. My point is just, I'll quote Mr. Spoon over from trial. I asked him, why did the mine stock the lake with fish? He said, so that we could fish them. And so they intended this to be a recreational lake. That's why they were stocking it with fish. That is why they allowed Mr. Hitchcock to build the ramp. The next question could be, well, the ramp was on Mr. Bull's property. I understand that. If you have a small private lake, and you own the entire lake at the time, and there's already a ramp there, why would you build another ramp? I mean, it just doesn't, it's not, I guess, logical at that point if you're not needing it for the small of the lake. So I think the idea that the mine was allowing ramps to be built, that they were stocking it, that they built a guest house to help bring folks in to fish these bodies of water, all support that the mine intended this to be a permanently recreational lake. But permanently recreational for whose benefit? At the time, it was the mines. But the easement wouldn't have been created until 2012 at the time it was severed. And so I think that there's a lot of why was the mine originally created? How was it used? I shouldn't say how it was used, but why was it created or why was the property lines divided the way that they were? Again, the easement here was not even created technically until 2012. The prior use is what supports the intention that the parties intended this easement to exist. So the prior use of the entire body of water over this continuous period of time, again, we have witnesses testifying from the mid-1980s to the mid-90s that they fished it. From the 90s into the 2000s when they fished it, that was Mr. Hitchcock. Mr. Schoonover testified that he remembers fishing the lake himself, being able to fish the entire lake himself. When he was a young boy, he is now still employed by the mine, I believe in his 40s. He recalls the mine allowing others to fish during this period of time. So the continuous and apparent I think is very much there because all of these folks were continuing to fish the property or business affiliates were being permitted to fish the property over a significant period of time. That significant period of time, that prior use is what shows the intention at the time of the severance that created the easement. That leads us into the third element, which is the necessary and beneficial component. This is a little confusing because the term necessary, when you read through the cases, doesn't really mean necessary as we typically think of it. The trial court stated that there was no need to really discuss this element because they didn't believe that the permanent component was there. Then they also stated the analysis flowed into the respondent's equity argument. The respondent's equity argument is based in the artificial becomes natural rule, which I'll discuss in a moment. Going to what we were discussing earlier about sometimes the law has harsh effects. Equity is not an element of an easement applied by pre-existing use, even if my clients had a fraction, a small fraction of the lake. The point is how was the entire lake being used for that long period of time. If the prior uses had all been on the larger portion of the lake, the plaintiff's portion, your case isn't made, right? You would agree with that? Your case isn't made if all the prior uses were of the plaintiff's portion of the land in the lake. Coming from their property staying in the lake on their side of the line, that wouldn't make any difference. If there had never been any type of use of our portion of the lake, I think there may be an argument there. I would point again, Your Honor, to Roketa. Roketa, they didn't own any portion of the lake. None of it. They said that because you have rivalable, open, visible benefits, which is a recreational lake right there next to your property, they were awarded the easement. They own zero portion of it. They acknowledge the benefits of having a lake touch your property, swimming, boating, fishing. Those are benefits that support granting the easement. If somebody was purchasing a property thinking that they had that benefit, that was in their favor. My clients testified to that. That is part of the Roketa case as well. I understand the point, Your Honor, about they own a small portion and how it's just this portion used, but if you really look at the case law, they didn't have to own a portion of it. It's the whole lake and what the rivalable benefit is, open, visible benefit is to that person. If in that situation where somebody abuts the lake, but there's no prior use from that property, that wouldn't constitute applied easement, would it? I don't know if I would agree with that, Judge, because I believe it would depend on how the lake was used. Again, we're not asking for an easement over land. In this case, we have something that touches the water. In that case, whether the shoreline was 10 feet under our property or right at the edge, Your Honor, I don't think my analysis would be any different. Maybe I'm missing it, Counsel, but your argument focuses on the use of the lake as a whole. The second element requires using part of the united parcel for the benefit of another part. What is the evidence of that? Many of the witnesses testified that being able to access the entire lake, fish the entire lake, hunt the entire lake was a benefit. That's when it's owned by one person or one entity. Was there anything about the evidence that indicated that this small portion here was really critical to their fishing or hunting or anything? Well, at that point, Your Honor, because again, the easement here, there wouldn't have been a separate owner. That wouldn't apply to the easement applied by pre-existing use because it would have been the same owner. There wouldn't have been a prior owner to have that. But if we just think about and it doesn't make sense, but unless there's some evidence that focuses on this particular piece that we should just assume then that it grants to whoever takes over that piece at a later date full access to the entire lake. I see my time's up, Your Honor. I would just state that I don't believe the record is assuming that. I believe that the record shows that there was use of that portion. I don't think that there's not any evidence that shows my clients or somebody or the mine was using that portion. Thank you. Thank you, counsel. You have an opportunity now to rebuttal. Counsel for the appellee, Mr. Newport. Good morning. May it please the Court, Mr. Chump. When we talk about an easement by implication, I agree there's three elements, but actually one and three are pretty singular. Two has three elements and part of the elements have eight elements and it goes on and on. So if you look at the number two on easements by implication, it has to be apparent and obvious, continuous and permanent. And the evidence here just doesn't sustain that. It's apparent, I guess, to somebody who sees it. I don't think it's obvious. These particular tracts of land are back where you have to want to go there to be there. Is that the relevant perspective? I mean, most private property is not open to the world. Yes. And we have easements arise in private properties all the time. Why would apparent mean apparent to the whole world? Sure. I understand your point. In this particular case, Mr. Hummel testified that he never saw anyone fishing on that body of water prior to the time that they bought their tract in November of 2018. Mr. Jacobus testified the same way. Mr. Bull said he never saw anybody fish there. He knew the coal companies had multiple bodies of water people fished on but he knew it wasn't public. He knew they had signs and fences and he didn't know who it was, but they fished there occasionally. We get to the point of what was the actual use. I want to mention, first of all, the hunters. They hunted during hunting season so that's certainly, maybe, at the most, 60 days out of 365. The witnesses that were offered by the Hummel and Jacobus one by one, this is what they testified to, Coey Schoonover who worked for the mine from 1985 to 2012 said he fished there 10 times in 27 years. He also took people out on the lake once in a while when he was a kid. That's not very much for the number of days involved. Mike Hitchcock who ran a scrap yard close there was allowed to fish there and he testified, it's in the record, three or four years he fished once a month in the early 2000s. Cooper Johnson testified one time he carried a canoe, he fought through the trees and may have entered that property from the Hummel and Jacobus property. There's no other testimony in the record of anybody ever entering that property prior to 2018 from the Hummel and Jacobus property. Mr. Arnett who was more or less the overseer of everything testified he had never fished there. There's no sporadic testimony of fishing ever now and then on that property. We're looking at years and years here where it certainly wasn't continuous. If you look at the whole situation here involving easements, you have a situation where the Hummel and Jacobus would have you believe they have the dominant tract and that the subservient tract is the larger tract of water that my client has. That doesn't make any sense at all when they never used it that way. All of the entries to the water came from the Bull property, whatever that was. I say it's not enough to be continuous or permanent, but even if it was it certainly doesn't create an easement. Don't we consider the nature of the property, the real estate? If it was a tract of land that was built for housing, building a house is the appropriate use. Isn't the use that you've described the kind of use that you would expect a full owner to make of a lake? I think, I'm not sure exactly what you're asking me but I think I know. Well let me make it clearer then. We don't expect that they would have built a skyscraper on a lake, right? We don't expect that's the nature of the use. Isn't the kind of intermittent fishing and hunting exactly the kind of use that one would expect someone asserting ownership rights to make of that property? Yes. So why isn't it enough? So why isn't it enough? Because they didn't use it, the bodies never used it. That's in the record. They never used it. But you've described occasional hunting, occasional fishing. Yes. Aren't those the kind of uses that one would expect somebody to make of that property? Absolutely and that's what the law that they had that they allowed different people to fish on. You had to be in the right place for them to allow you to fish but they had 30 bodies of water and they let people fish there. At the end of the day, they cut them back up to the original description and conveyed them back to various owners who bought the properties. And in these two particular cases, two farmers bought these properties to farm. Each property has 30 tillable acres on it. It's not like either of these properties are worthless if they don't have an easement by implication. In fact, it's quite the opposite. They got what they paid for. And my client paid a little more to get a body of water on his property. The other people just paid for tillable property. So the actual use of the property was farming and incidental to that, there could be jet skis and speed boats and water skiers and all the right to use the body of water could put on it. But I think the fact that the access was only gained from the Bull property and not from the Hummel and Jacobus property, plus the fact that the people who were involved in this never saw it used by anyone else. And in fact, Hummel and Jacobus farmed this farm that they bought and they were in a perfect position to see this for years. They testified they did not see anyone fishing there. And then after the property was severed, which if there was an easement created, that would have been the date, 2012, six years went by and the home company owned the Hummel and Jacobus tract and never once attempted to use it. I know that's after the fact, but it shows their intention. Their intention was to never utilize that property to get on the Bull property's surface of water. And that's even bolstered more by the fact that they gave both parties a deed with warranties that said, hey, during the time we owned this, we didn't do anything to mess up the warranties. No, no. We didn't. And so they gave them a special warranty deed that said, we're giving you a good title and we didn't do anything to mess that up. So their intention was never to create an easement by implication. Counsel, how do you address opposing counsel's comments with regards to the Rocatta case? I think when you start talking about where people live in bodies of water that are created artificially and people buy property that adjoins water, they expect to use the water. And that's true even on strip mine lakes where they have subdivisions. Everybody can use it because that's what they expect. They subdivide around it and they allow people to use it. But that's markedly different. In this case, this body of water was never created for the benefit of landowners to build around it, never subdivided. It's different totally than Rocatta. I want to comment also on the artificial becomes natural rule and I don't think it takes too much discussion because the application of that rule is only applied in situations where the party invoking the rule, Hummel and Jacobus, has relied upon the use of the body of water for some time. I guess they're saying maybe somebody else used it, but they certainly didn't use it. Without a dispute for a lengthy period of time. But they bought it in December of 2018 and within days after they bought it and twice within a month, they asked the bulls if they could use their land to enter the body of water and were told no. They were also told not to use the body of water at all. There was a dispute here immediately in which case, Hummel and Jacobus just built a boat ramp because there was no way to get to that body of water in the condition the land was in. They moved trees, used all kinds of equipment and they put a boat ramp in. For the first time in the history of that body of water, someone entered after they built their boat ramp from Hummel and Jacobus. You don't dispute their right to do that and use the lake bed that is on their property? You don't have any dispute that they have a right to use the portion of the property, the portion of the lake that overlies their property? Do you agree that your client has no right to use that portion? Absolutely. I have nothing further except to say that I think that Judge Graham here is in a position in the trier of fact to blow the witnesses and judge your credibility and I believe that he came up with the right decision and it should be affirmed. Thank you. Thank you, Counselor. Mr. Jim Rubello. Thank you, Your Honors. A couple of things just quickly to address the easement. I know we spent some time on that. I believe Mr. Neukel is assuming a lot of facts that aren't in evidence. He talked about the special warranty deed. Just to be clear, of course these deeds didn't mention the easement. It's an implied easement. That's what we're arguing. I don't expect to see it in the deed. Is the argument essentially though that it reflects on the intention of the mine owner? I believe that that may be his argument. Why wouldn't that be correct in your mind? Why wouldn't that be valid evidence of the intention of the party that severed the properties? Well, Your Honor, I think we would never have implied easements if that's the case. I think a lot of times that properties are commonly deeded by warranty deeds or special warranty deeds. I would think that the courts by now would have established a bright line rule that would have said if there's a warranty deed, you don't get an implied easement. There's no such case that I'm aware of that's out there that states that. With regard to the continuous argument, real quickly, I think the court made a good point. This is fishing. They're not going to be out there every single day. They can't fish every single day. What we were able to prove at trial is that over a period of nearly 30 years, these folks personally fished it at various times or witnessed other people fishing it or knew about the mine fishing it. I think that there is more than enough evidence to show that for this period of time, there was regular fishing and recreational activities occurring on the body of water. But if that all happened from plaintiff's property and over plaintiff's property, how would that help you? Your Honor, I would still state that it was also on my client's property. By this idea of the whole lake? They testified that they used the whole lake. They testified that they fished on the whole lake. Do you mean they went every square foot of the lake? I could go where I wanted to. They testified that they fished the entire lake. I don't want to make a misstatement there. I get the point, but again, I would reiterate with the issues with the ramp. We acknowledge that the ramp was easier to install on the other property. That came out of trial. Why would you have multiple ramps? Of course, you're going to access it more regularly when you own the whole parcel from the portion that's easiest to access it. Again, we're just talking the access to the lake. In this case now, there are multiple accesses to the lake. The point more so is about the use of the lake itself. One fact Mr. Neupel mentioned that seemed to stand in fairly stark contrast with something that you had argued initially was that one person testified they may have carried a canoe over that property one time to enter the lake. I think your comment was a little broader that people did, that there was evidence that people did in fact access the lake from that piece. Your Honor, I read that in his briefs as well. I've been unable to testify that he stated he only carried the canoe across it one time. I know that he did state that he accessed the body of water from that portion in various areas of the body of water. We're talking about Cooper Johnson. Your Honor, I don't recall that portion of the record as Mr. Neupel stated. Real quick, I want to address the artificial becomes natural rule. I think the point here is that we need to look at the use over a long period of time. I believe that the trial court basically stated because there was a common owner, Your Honor's comments earlier, that it wouldn't apply. There's nothing in the Supreme Court's case that states that is required. No, but it does say undisputed. As we talked about, it's hard to put that into a context that makes sense if one person knows it. Your Honor, I would just look at the history of how that case came into play and how they got to the ruling. The point was that an artificial body of water may have all the physical and functional characteristics of a lake and hence be a practical lake for all purposes. That is how was the lake used? I think just narrowing this down to a couple months or six years from 2012 to 2018 completely flies in the face of what Alderson stood for and what Beecham stood for and what the Bone case stand for. These are cases that are looking at how the lake was used over a long period of time. There was no issue. But if it was a common owner, there's not going to be an issue. But it doesn't state that there can't be the same owner. The point is how was that prior use occurring? Were they treating it as a natural lake? Flip that. Is there a case that says even if it's used by a prior owner, that counts? Sorry, prior unified owner? No, I'm not aware of a case that says one way or the other on that. I think they just established that minimum requirement. But they didn't say it was a minimum requirement. They said that cases that have applied in the past have missed that minimum requirement. Decades, typically. In this case, we have 30 years plus. I think fairness and equity support finding my clients a title of recurring rights. I see my time is up. Thank you, Your Honor. Thank you, counsel. The court will take this matter under advisement. The court stands in recess.